No. 17,533.

GEORGE H. CURTIS, AS CONSERVATOR, ET AL. *v.*
E. E. WILSON.
(282 P. [2d] 1079)

Decided April 25, 1955.

Mr. JOHN IRA GREEN, for plaintiffs in error.

Messrs. BOYLE & WITTY, for defendant in error.

*En Banc.*

MR. JUSTICE BRADFIELD delivered the opinion of the Court.

THE writ of error issued in this case was directed to the district court of the County of Chaffee to review its proceedings in an action for money due and owing under a purported contract for the sale of a one-half interest in jointly owned lands and state land leases, and for one-half of moneys expended thereon during the joint owner-

ship. The case was on a change of venue from the district court of Saguache county. Plaintiffs in error were plaintiffs, and defendant in error was defendant in the trial court, and herein they will be designated as they appeared in that court.

Plaintiffs Jacob Barsch and C. N. Miller were partners doing business as Barsch and Miller. Subsequently, Jacob Barsch, becoming a mental incompetent, George H. Curtis was substituted for and appears herein as his conservator. The case was tried to the court which made findings and rendered a judgment for defendant against plaintiffs under said contract for sale; and a judgment for plaintiffs and against defendant for the moneys expended on the lands during the joint ownership. Motions for rehearing and new trial were dispensed with.

Plaintiffs and defendant were partners in the ranching business and joint owners of deeded lands and leases on state lands in Saguache county, each owning an undivided interest therein. By written contract dated October 7, 1948, defendant sold and assigned his one-half interest in said lands, leases and improvements to plaintiffs for $15,000.00, allegedly covenanting to obtain the approval of said assignment by the State Board of Land Commissioners. The assignments of the leases were executed by defendant December 6, 1948; the $15,000.00 was paid by plaintiffs to defendant December 27, 1948. The State Land Board determined the leases had made a capital gain of $5000.00 and required lessees to pay one-half thereof, or $2500.00, to the State Land Board as a condition precedent to its approval of the assignments. Plaintiffs paid the one-half of the capital gain, $2500.00, to the State Land Board on January 6, 1950. The assignments of the land leases from defendant to plaintiffs were recorded and approved by the State Land Board January 17, 1950. Assignments of the land leases from plaintiffs to the San Luis Valley Land and Cattle Company also were recorded and approved by the State Land Board on January 17, 1950. Subsequently, on

August 11th and 14th, 1950, said land leases were assigned by plaintiffs to the San Luis Valley Land and Cattle Company, a third party.

March 28, 1952, plaintiffs filed suit against defendant. By amended complaint, in their first cause of action, plaintiffs seeks to recover one-half of this payment, or $1250.00, with interest, from defendant as his share of the capital gain paid by plaintiffs to the Land Board; and on their second cause of action plaintiffs seek to recover one-half of the expenses incurred by them on the lands prior to the sale.

Defendant by answer to the first cause of action denied liability under the contract of sale and under the state leases and orders of the State Board of Land Commissioners; alleged that plaintiffs, by voluntarily paying the one-half of the capital gain, thereby waived any requirement of defendant to secure the approval of the State Land Board; and admitted he refused to pay plaintiffs the $1250.00.

The state land leases (Par. 3) provided no assignment shall be valid until recorded with, and approved by, the State Board of Land Commissioners, and that the lessees, upon such assignment, shall pay to the State Land Board one-half of any capital gain.

The contract between the parties provided:

"Whereas, the parties of the first part now contemplate entering into a contract for the sale of a large portion of their lands and personal property in Saguache County, and whereas, the prospective purchasers are desirous of including the above described lands in said purchase, IT IS HEREBY AGREED * * *

"I. That defendant is to sell to plaintiffs the lands and leases for $15,000.00, to be conveyed "by deed and assignment of said land leases at any time that the parties of the first part sell their properties in Saguache County as above described.

"II. * * * said payment to be made upon the execution of a Warranty Deed * * * and upon assignment of

said State Leases" to first parties by second party, "and upon the approval of said assignment by the State Board of Land Commissioners.

"III. The term of this agreement shall be for one year from the date hereof and the parties of the first part shall not be required to purchase the above described lands and leases unless they sell their Saguache County property as above indicated, and at the termination of this agreement in the event the parties of the first part have not made said sale, then this agreement shall become null and void and of no further force and effect, provided, however, that this agreement shall in no wise interfere with any subsequent joint agreement of all the parties hereto to sell jointly the above described lands and leases."

The trial court found (summarized):

"* * * that the agreement between the parties was an option given by defendant granting plaintiffs the right to purchase certain land and leases during the term of one year from the date of said option for the sum of $15,000.00; that before the expiration of said option and on December 27, 1948 plaintiffs paid defendant the option price of $15,000.00. Later on January 6, 1950, plaintiffs paid the State Board of Land Commissioners $2500.00, as a prerequisite to the assignment of the leases, and made demands upon the defendant for $1250.00, being one-half of said payment. The defendant refused said demand, and plaintiffs filed this action * * *."

That the language of the contract, "and upon the approval of said assignment by the said Board of Land Commissioners," is "clear in its terms and free from ambiguity and deem it to be a provision of the option to protect plaintiffs against having to purchase the property in event of the failure of approval of said assignment by the Board of Land Commissioners. The fact that the leases themselves provide terms and conditions on which assignments can be made is no part of the agreement between the parties and to this action, and even if the terms of the

assignment are to be read into the lease they would not create an obligation on the defendant to obtain the approval of the assignment, as contended by plaintiffs. * * * It is an option by second party to sell, conditioned only upon approval by the Board. This language cannot by any construction require the defendant to secure the approval; in fact it may more properly be said to be a safety clause relieving the plaintiffs from the option, should approval be denied, in which event the option would be void. * * *

"Finds that the agreement between the parties of October 7, 1948 is clear, concise and not ambiguous, and does not require the defendant to secure and pay for said assignment, or any part thereof, and that the plaintiffs' first cause of action should be dismissed; * * * that defendant confesses judgment upon plaintiffs' second cause of action in the sum of $163.18 for which judgment should be rendered without interest."

Plaintiffs urge five points for reversal: That the trial court erred, (a) in failing to recognize the essentials constituting an assignment of a state lease; (b) in the construction of the provisions of the state leases and the contract of October 7, 1948, and failing to give effect to the terms thereof; (c) in failing to recognize the duty of the State Board of Land Commissioners to a request for assignment and transfer; (d) in holding that the decision of the State Board of Land Commissioners was not conclusive against defendant; (e) in holding that the payment of the capital gain of $2500.00 by the lessees was voluntary or had been waived by plaintiffs.

It is urged that the court erred in its construction of the terms of the contract of October 7, 1948, and of the state land leases. The contract by its terms was not absolute, but was limited in its effect by Paragraphs II and III, above set forth. The trial court, giving effect to its several provisions, held the contract to be an option to become effective on the happening of certain conditions; that the provisions in the leases themselves did

not become a part of the contract of the parties; that the contract itself contained no requirement for defendant to secure or pay for the approval of the assignments by the State Board of Land Commissioners. Paragraph I of the contract concerned only the agreements of second party to sell his undivided one-half of the land and leases for $15,000.00, and to convey same "by deed and assignment of said state leases." Paragraph II of the contract concerns only the agreements of first parties to pay the purchase price, "said payment to be made upon the execution of a warranty deed * * *, and upon the assignment of said land leases *to the parties of the first part by the party of the second part* (emphasis supplied), and upon the approval of said assignment by the State Board of Land Commissioners." These three requirements applied only to when the purchase price was to be payable; further, that the required assignments of the leases were in its terms applicable only "to the parties of the first part by the party of the second part." The approval of the assignments by the Land Board was a separate sentence which contains no requirement that defendant should secure or pay for the assignment approval by the State Land Board. Thereafter follows Paragraph III of the contract further conditioning the application of the contract.

The minutes of the meeting of the State Board of Land Commissioners indicate that on October 15, 1949, the capital gain on the land leases was first fixed at $10,000.00, requiring the lessees to pay one-half thereof, or $5000.00. The assignments then being considered were two from E. E. Wilson to Jacob Barsch and C. N. Miller and six from Jacob Barsch and C. N. Miller to the San Luis Valley Land and Cattle Company, all said assignments being considered together. At a subsequent meeting of the Land Board it recited, "Whereas, Board Order dated October 15, 1949, approving the assignment of the Barsch-Miller leases identified in said order to the *San Luis Valley Land and Cattle Company*"

(emphasis supplied), "conditioned upon the payment by the assignors to the State of the sum of $5000.00, the same representing one-half of the profit received by the assignors over and above the value of improvements and any prepaid rentals."

The Land Board then decided to correct and reduce the capital gain on said leases from $10,000.00 to $5000.00:

"It is further ordered that the above mentioned assignments be, and they will stand approved of record * * * upon the receipt from the assignors of the sum of $2500.00, the same representing one-half of the profits moving to the assignors on the sale of the leases."

In this connection plaintiffs called as their witness Harold F. Collins, who was a member of the State Board of Land Commissioners and president at the time the leases here in controversy were approved, who testified:

"The Court: * * * would your office then upon the application of the transfer by Barsch and Miller as the entire owners of the lease, ask them for an assignment of the lease to The San Luis Valley Land and Cattle Company? Was that the assignment upon which you fixed this valuation and exacted the payment of $2500.00?

"The Witness: It was the assignment to the San Luis Valley Land and Cattle Company, yes, sir."

This testimony and the minutes of the Land Board indicate the $2500.00 payment by plaintiffs to the Land Board was the result of the approval of the assignments from Barsch and Miller to the San Luis Valley Land and Cattle Company. This sustains the finding of the trial court that the payment of the assignment fee by plaintiffs was not on account of the Wilson to Barsch and Miller assignments. As to defendant Wilson, plaintiffs' payment of the $2500.00 to the Land Board was a voluntary payment.

There being no term in the contract requiring defendant to secure the approval of the State Land

Board, and the state land lease terms not being incorporated into the contract by reference or interpretation, and plaintiffs' payment of the $2500.00 capital gain on the leases being voluntary by plaintiffs, the trial court was right in holding the requirements alleged to be performed by defendant were not established. The first cause of action was properly dismissed.

As to the plaintiffs' second cause of action, the trial court found that defendant had confessed judgment in the sum of $163.18, without interest; this cause of action is not herein challenged.

The judgment of the trial court is affirmed.